IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL NEIL KELLEY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No. 2:12-cv-1143-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Michael Neil Kelley ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB") and Social Security Income ("SSI") benefits under the Act. *See also,* 42 U.S.C. §§ 405(g), 1383(c)(3). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is to be affirmed.

**I. Proceedings Below**

Plaintiff filed his applications for disability, DIB, and SSI benefits on April 29, 2009. (Tr. 51, 52). Plaintiff alleged a disability onset date of January 15, 2007 in both his DIB and SSI applications.[1] (Tr. 99, 103). Plaintiff's applications were initially denied on September 16, 2009. (Tr. 53). On October 7, 2009, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 62). Plaintiff's request was granted and a hearing was set for January 13, 2011. (Tr. 25-50, 64). In her February 14,

---

[1] During the hearing, Plaintiff's alleged disability onset date was amended to January 1, 2008. (Tr. 31-32).

2011 decision, the ALJ determined Plaintiff was not eligible for a period of disability, DIB, or SSI benefits because he failed to meet the disability requirements of the Act. (Tr. 24). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1-3). 42 U.S.C. §§ 405(g), 1383(c)(3).

At the time of the hearing, Plaintiff was thirty-eight years old with a twelfth grade education. (Tr. 30). Plaintiff previously worked as a tree trimmer, maintenance worker, stocker, laborer, deburrer operator, and hand packer. (Tr. 146-51). Plaintiff alleges he suffers from chronic lower back and leg pain. (Tr. 36, 127). Plaintiff also suffers from ongoing substance abuse problems. (Tr. 39-40). According to Plaintiff, he has been unable to engage in substantial gainful activity since January 1, 2008 because of his impairments. (Tr. 31-32, 128). Plaintiff testified he experiences difficulty sleeping, is prone to outbursts, and generally suffers from "bad nerve[s]". (Tr. 41-42). Although prescribed Trazodone and Buspar for anxiety and sleep disorder, Plaintiff stated he still occasionally has difficulty sleeping and the limitations from his "nerves" would prevent him from holding a hypothetical job as a parking lot attendant. (Tr. 42-44).

Plaintiff's alleged pain in his leg and ankle stem from an automobile accident in January 2006, and a further aggravation of the ankle injury in April 2006. (Tr. 36-37, 182). From February 2006 through December 2007, Plaintiff was seen by Drs. Jorge Alonso, John Holcombe and Jonathon Mize of the University of Alabama Birmingham Health Center ("UAB Health Center"), primarily in connection with recurring pain and treatment of his right leg and ankle. (Tr. 174-202). Dr. Alonso diagnosed Plaintiff with a

distal tibial fracture and performed an open reduction and internal fixation on February 2, 2006. (Tr. 194). The plate and screws were removed from Plaintiff's right tibia on June 14, 2007. (Tr. 194-99). Additionally, beginning on May 1, 2007 and at subsequent follow-up visits, Plaintiff was diagnosed with polysubstance abuse with depression and was prescribed, on separate occasions, Effexor, Lexapro and Cymbalta. (Tr. 175-77, 202). On Plaintiff's last visit to the UAB Health Center on December 3, 2007, Dr. Holcombe diagnosed chronic neuropathic pain secondary to trauma and increased his prescribed dosage of Lyrica to the maximum dosage. (Tr. 174). Dr. Holcombe also referred Plaintiff to Cosgrove and Kendrick for chronic pain management of chronic neuropathy. (Tr. 174)

Plaintiff was seen at Cooper Green Hospital on numerous occasions from April 12, 2008 through September 2, 2010. (Tr. 208-36, 266-87). On certain occasions Plaintiff was diagnosed with chronic ankle pain. (Tr. 208-13). (Tr. 220, 228-29, 231-32, 274, 276-78, 286). On December 24, 2008, Plaintiff was diagnosed by Dr. Saluf Mansur with lower back pain, a "mildly prominent low sigmoid signal", and asymmetry of the facet joints. (Tr. 220). However, medical records show no evidence of significant degenerative disc disease, focal disk herniation, bulge of significance, or spinal or foraminal stenosis. (Tr. 220). Plaintiff was referred to a pain clinic for his back pain, but the record indicates that he failed to show. (Tr. 229, 274, 276-79, 286).

On August 27, 2009, Plaintiff was examined by Dr. Rodolfo Veluz to evaluate Plaintiff's range of joint motion. (Tr. 237-43). Plaintiff "attempted to squat, but squatted midway and complained of pain." (Tr. 239, 241). Likewise, Plaintiff attempted to "heel/toe walk" and "tandem gait," but was unable to complete either due to pain. (Tr.

239).  Upon examination of Plaintiff's back, Dr. Veluz found no spasm and no deformity, but did note the previous diagnosis by Dr. Mansur at Cooper Green of degenerative disk disease. (Tr. 237)  Dr. Veluz further noted that Plaintiff's clinical records include a CAT scan on his injured ankle that showed "a lot of arthritic changes in the painful area and the non-healing fracture."  (Tr. 238).  Dr. Veluz diagnosed Plaintiff with both back and leg pain, but felt Plaintiff's "major problem" was his mental status and recommended a psychological or psychiatric evaluation.  (Tr. 240). Dr. Vulez also noted that Plaintiff was previously diagnosed with depression by Dr. Mansur, but had failed to visit a psychiatrist.[2]  (Tr. 238).

On September 16, 2009, Plaintiff was examined by Dr. Robert Heilpern for a physical residual functional capacity ("RFC") assessment.  (Tr. 258-65).  Dr. Heilpern determined Plaintiff could: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for about six hours in an eight hour workday; sit for about six hours in an eight hour workday; was unlimited in push and/or pull (including operation of hand and/or foot controls); never climb any ladders, rope, or scaffolding; only occasionally climb a ramp or stairs, stoop, kneel, or crouch; frequently balance or crawl; was limited in his ability to reach in all directions (including overhead); and avoid all exposure to unprotected heights or uneven terrain.  (Tr. 259-62).  Dr. Heilpern concluded Plaintiff's alleged limitations are "partially credible," but found the medical evidence of record did not establish "the full level of severity alleged."  (Tr. 263). Specifically, Dr. Heilpern viewed Plaintiff's statement that he is unable to stand for more than five minutes as "not credible."  (*Id.*).

---

[2] There does not appear to be any documentation in the medical evidence reflecting this diagnosis by Dr. Mansur of Cooper Green Hospital.

4

On September 16, 2009, Dr. Robert Estock performed a psychiatric review technique of Plaintiff.  (Tr. 244-57).  He noted Plaintiff's previous diagnosis of depression and history of anxiety, polysubstance abuse, and alcoholism.  (Tr. 247, 249, 252).  Dr. Estock categorized Plaintiff's affective disorder, anxiety, and substance abuse as non-severe impairments.  (Tr. 244).  He indicated Plaintiff's impairments as mild limitations in three of the functional limitation categories, but found Plaintiff had not experienced any episodes of decompensation of an extended duration.[3] (Tr. 254). Further, Dr. Estock's assessment indicated that Plaintiff's evidence of depression and anxiety did not establish the "C" criteria of the Listings.  (Tr. 255). Dr. Estock further noted that Plaintiff is able to prepare simple meals, do laundry, spend time with friends, and attend church weekly.  (Tr. 256). Further, he indicated Plaintiff experiences no problems getting along with others, in concentration, memory, following or understanding instructions. (*Id*.). While Plaintiff experiences noted limitations in personal care, completing tasks, and handling stress, the review indicates these limitations are due to Plaintiff's physical limitations and constant pain.  (*Id.*).  Dr. Estock concluded that Dr. Veluz's opinion that Plaintiff's mental status is his major problem is "not well supported by [the medical evidence of record]" and Plaintiff "himself note[d] that he stopped working due to physical limitations."  (*Id*.).

On October 2, 2010, Plaintiff was admitted to Brookwood Medical Center and diagnosed with an opiate and cocaine dependency, depression, and suicidal ideations.

---

[3] The functional limitations are found in paragraph B of Listings 12.02-12.04, 12.06-12.08 and Paragraph D of 12.05 (collectively "the Listings"). 20 C.F.R. Pt. 404, Subpt P, App. 1.

(Tr. 289, 295).[4] Plaintiff reported "abusing Dilaudid, cocaine, and heroin intravenously" and was experiencing withdrawal symptoms including aching, cramping, nausea, and vomiting. (Tr. 289). Plaintiff acknowledged having suicidal ideations, but denied attempting suicide or having a plan to do so. (*Id.*). After detoxification therapy, Plaintiff was discharged from Brookwood Medical Center on October 3, 2010 and encouraged to both follow-up with a primary physician and attend Narcotics Anonymous and Cocaine Anonymous meetings. (Tr. 289).

On January 6, 2011, Plaintiff was referred by his attorney to Dr. Jon Rogers, Ph.D. for a psychological evaluation. (Tr. 296). According to Dr. Rogers's report, Plaintiff's mood "appeared depressed" and "most of the time [Plaintiff] feels 'sad.'" (Tr. 300). Dr. Roger's administered the Wechsler Intelligence Scale - 3rd Edition (WAIS-III) and found that Plaintiff has an IQ of 76 which is within the "borderline mental functioning range intellectually." (*Id.*). Dr. Rogers also administered the Wechsler Individual Achievement Test (WIAT) and indicated Plaintiff has a "learning disability in Numerical Operations" that would be "insufficient for employment." (Tr. 301). Because Plaintiff had reported a number of depressive symptoms, a Beck Depression Inventory-II (BDI-II) was administered, indicating a "clinically significant depression." (*Id.*). Dr. Rogers also completed a Supplemental Questionnaire as to Residual Functional Capacity and determined Plaintiff had marked impairments as to concentration, persistence or pace, ability to respond to customary work pressure, and ability to perform repetitive tasks in a work setting. (Tr. 303-304). Plaintiff told Dr. Rogers he was dependent on Lortab and indicated that he had last used Lortab on December 27, 2010. (Tr. 298).

---

[4] Attending physician Howard M. Strickler noted Plaintiff's history of opiate and alcohol dependency and that he had previously been hospitalized at Brookwood Medical Center in July 2007 for treatment. (Tr. 289).

However, Dr. Rogers indicated, regarding the severity of Plaintiff's anxiety and depression impairments, "these levels of severity apply without considerate [sic] of substance abuse." (Tr. 298, 304).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant

is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2008, and that Plaintiff's brief work after his alleged disability onset date amounts to an unsuccessful work attempt. (Tr. 18). Based on the evidence presented, the ALJ determined that Plaintiff's "post-traumatic arthritis of the right tibiotalar joint, borderline intellectual functioning and polysubstance abuse" were medically determinable impairments. (Tr. 19). The ALJ concluded that, either singly or in combination, these impairments constitute severe impairments as defined by the Act. (*Id.*).

The ALJ also found that Plaintiff's anxiety and depression are "non-severe" impairments, noting Dr. Rogers labeling of Plaintiff's anxiety and depression as non-severe. (Tr. 19-20). The ALJ cited Plaintiff's failure to seek assistance from a mental health specialist, Plaintiff's own statements that his physical condition was to blame for his work stoppage, and his statement that his depression had improved at the time of his work stoppage as reasons to consider depression and anxiety non-severe. (Tr. 19-20).

Additionally, the ALJ found that based on the medical evidence provided Plaintiff's back and hand conditions do not produce significant limitations in work activities and were non-severe. (Tr. 20). In conclusion, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ began her RFC analysis by reviewing the report of Dr. Heilpern, the state agency reviewer, who cleared Plaintiff for work up to the medium level of exertion. (Tr. 22). The ALJ concluded that Dr. Heilpern did not have the benefit of Plaintiff's hearing testimony, and based on Plaintiff's "somewhat convincing" statements as to his ongoing pain, that Plaintiff was limited to the light level of exertion with a mandated a sit and stand option. (*Id.*). In light of the ALJ's findings as to Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform his past relevant work, which the vocational expert ("VE"), William Ellis, found was at a medium or heavy exertional level. (Tr. 23). Taking into account Plaintiff's age, education, work experience, and RFC, the ALJ found jobs which exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 23-24; *see* 20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.919(a)). Therefore, the ALJ concluded that Plaintiff is not disabled as defined by the Act. (Tr. 24).

### III.   Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Pl.'s Br. at 16). Plaintiff argues the ALJ erred by: (1) not considering his depression and anxiety to be "severe" impairments; (2)

9

failing to properly evaluate the medical evidence from examining source Dr. Rogers; (3) failing to properly develop a full and fair record; and (4) by not recontacting Dr. Rogers for clarification. (Pl.'s Br. at 10-15).

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence, "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.  **Discussion**

   a.  **The ALJ Did Not Err by Finding that Depression and Anxiety are Non-Severe Impairments**

Plaintiff contends the ALJ's finding that his anxiety and depression are "not severe" constitutes reversible error. (Pl.'s Br. at 8-10). The court disagrees. Plaintiff relies on *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984) and *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). In both *Brady* and *Hillsman* the ALJ determined that the claimants did not suffer any severe impairments for purposes of step two of the sequential evaluation process. *Brady*, 724 F.2d at 917-18; *Hillsman*, 804 F.2d at 1180. The Eleventh Circuit remanded both cases, holding that substantial evidence did not support the ALJs' findings that the impairments were not severe. *Brady*, 724 F.2d at 921; *Hillsman*, 804 F.2d at 1182. Here, unlike both *Brady* and *Hillsman*, the ALJ had already determined Plaintiff's "post-traumatic arthritis of the right tibiotalar joint, borderline intellectual functioning and polysubstance abuse … are [ ] severe" for purposes of step two of the sequential evaluation process. (Tr. 19). While the ALJ may have misunderstood the "NOS" indicator within Dr. Rogers's report to mean non-severe, she had already found that Plaintiff suffered from other severe impairments. (Tr. 19). Having already determined that Plaintiff suffered from other severe impairments, on this record it was not error for the ALJ to fail to find additional severe impairments. *Burgin v. Comm'r of Soc Sec.*, No. 10-13394, 2011 WL 1170733, at *1 (11th Cir. Mar. 30, 2011)[5] ("Even assuming the ALJ erred when he concluded [Plaintiff's impairments] were not severe impairments, that error was harmless because the ALJ considered all of

---

[5] Although the *Burgin* decision is unpublished and has no precedential value, the court concludes that it is well reasoned.

[Plaintiff's] impairments in combination at later steps in the evaluation process."). Once the ALJ determined one of Plaintiff's impairments was severe, she was required to consider the effects from all of Plaintiff's impairments, whether severe or not, at the remaining steps in the evaluation, which she properly did. (Tr. 20-23). *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

At step three of the evaluation, the ALJ determined Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal" the listings. (Tr. 20). Further, the ALJ discounted the moderate restrictions set forth by Dr. Rogers's report due to inconsistencies with Plaintiff's daily activities, his demeanor and responses at the hearing, and Dr. Rogers's own finding that Plaintiff "presented normal speech, articulation, attitude, orientation, memory and mental activities." (Tr. 20, 300); *Bowen,* 748 F.2d at 635 (11th Cir. 1984). The ALJ did not reference the "NOS" designation as a basis for discounting Dr. Rogers's opinion or when determining that Plaintiff's mental impairments did not meet the listings. (Tr. 20).

In determining Plaintiff's RFC, the ALJ considered Plaintiff's mental impairments, but was "unable to accept" that the marked limitations found by Dr. Rogers were derived from Plaintiff's non-severe depression or anxiety, rather than his history of substance abuse. (Tr. 22, 300). The ALJ made clear that her finding was *not* based on her understanding that Dr. Rogers labeled Plaintiff's depression and anxiety "non-severe," but rather was based on the ALJ's inability to distinguish which limitations were derived from depression as opposed to substance abuse. (Tr. 22-23). Further, the burden is on Plaintiff to produce evidence that supports his claim. *See* 20 C.F.R. §§ 404.1512(a),

416.912(a); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Therefore, the ALJ's reference to depression and anxiety as "non-severe" impairments when evaluating Plaintiff's RFC was, at most, harmless error. Because the ALJ determined Plaintiff suffered from at least one severe impairment for purposes of step two, considered all of Plaintiff's impairments, including depression and anxiety, throughout the subsequent steps of the sequential evaluation process, the ALJ did not commit an error by failing to consider Plaintiff's depression and anxiety severe impairments.

### b. The ALJ Did Not Err in Evaluating the Medical Evidence of Record

Plaintiff alleges that the ALJ erred in three distinct ways in evaluating the evidence of record: (1) the ALJ improperly weighed the medical evidence of record, including Dr. Rogers's opinion, (2) the ALJ erred by not developing a full and fair record, and (3) the ALJ erred by failing to recontact Dr. Rogers for clarification. (Pl's. Br. at 10-15). Each allegation is addressed in turn but they all lack merit.

### i. The ALJ Properly Weighed the Medical Evidence of Record

While the "treating physician rule" does give substantial weight to the opinion of a treating physician, the regulations do not give deferential status to the opinions of non-treating sources. 20 C.F.R. §§ 404.1527, 416.927. Dr. Rogers examined Plaintiff on only one occasion, provided no history of treating Plaintiff on other occasions, and did not prescribe any medications or recommend a treatment plan for Plaintiff. (Tr. 296-305). Therefore, his opinion is not due the deferential status of a treating physician's opinion. 20 C.F.R. 404.1527(c)(2); *McSwain v. Bowen*, 814 F.2d 617 (11th Cir. 1987) ("Also their

opinions are not entitled to deference because as one-time examiners they were not treating physicians.") (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (rejecting the application of the treating physician rule for a one-time examiner)). Moreover, the ALJ is free to reject the opinion of any physician when the evidence of record supports a contrary conclusion as long as the ALJ states the reasons for doing so. *See, e.g., Bloodsworth*, 703 F.2d at 1240.

The ALJ found that Dr. Rogers's opinion was not consistent with other evidence in the record, specifically Plaintiff's failure to see a mental health specialist aside from hospitalization for substance abuse, his statement that his physical impairments were the cause of his work stoppage, his own admissions as to his daily activities, and his "demeanor and responses" to questioning at the hearing. (Tr. 20). Therefore, the ALJ discounted Dr. Rogers's report. (*Id.*). The ALJ did not err in evaluating the medical evidence of record from Dr. Rogers. Because Dr. Rogers was not Plaintiff's treating physician, the ALJ specifically stated the reasons for discounting Dr. Rogers's opinion, and substantial evidence supports the contrary conclusion.

The ALJ did find this same evidence corroborated Dr. Estock's report and therefore, gave substantial weight to his opinion. (*Id.*). The evidence given by a state agency reviewer is entitled weight when supported by substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-6p, 1996 LEXIS 3, *6-7. Based on same reasons the ALJ gave for discounting Dr. Rogers's opinion, she concluded Dr. Estock's opinion was supported by the evidence and was afforded substantial weight. (Tr. 20).

### ii. The ALJ Fully and Fairly Developed the Record

It is well-settled that an ALJ has a duty to fully and fairly develop the record. *Cowart*, 662 F.2d at 735; *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1981). An ALJ's duty to develop the record includes "stat[ing] specifically the weight accorded each item of evidence and the reasons for [her] decision." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (citing *Cowart*, 662 F.2d at 735). Here, the ALJ specifically stated that Dr. Rogers's report should be discounted because of its inconsistency with the record, including Plaintiff's failure to see a mental health specialist aside from hospitalization for substance abuse, statement that his physical impairments were the cause of his work stoppage, his own admissions as to his daily activities, and his demeanor and responses to questioning at the hearing. (Tr. 19-21). The ALJ determined that this same evidence corroborated Dr. Estock's opinion; therefore, the ALJ assigned substantial weight to Dr. Estock's opinion. (Tr. 20-21). *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-6p, 1996 LEXIS 3, *6-7.

### iii. The ALJ Did Not Err in Failing to Recontact Dr. Rogers

Plaintiff contends that the ALJ mischaracterized Dr. Rogers's report rather than seeking clarification from Dr. Rogers pursuant to 20 C.F.R. §§ 404.1519p(b), 416.919p(b). (Pl's. Br. at 13). However, 20 C.F.R. §§ 404.1519p(b) and 416.919p(b) each are found within regulatory sections that provide rules regarding recontacting court ordered consultative experts. 20 C.F.R. §§ 404.1519, 416.919. Here, Dr. Rogers did not perform a court ordered consultative examination; rather, Plaintiff was referred to Dr. Rogers by his attorney. (Tr. 296). The appropriate provisions for recontacting an examining physician state that, if the evidence is either insufficient to determine if a

15

claimant is disabled or if after weighing the evidence a conclusion about whether a claimant is disabled cannot be reached, the ALJ "may recontact the treating physician, psychologist, or other medical source." 20 C.F.R. §§ 404.1520b(c), 404.920b(c). In this case, there was substantial evidence to support the ALJ's determination that Plaintiff was not disabled; therefore, it was unnecessary to recontact Dr. Rogers. Because Plaintiff was represented by counsel, the ALJ did not have a special duty to develop the facts in the case. *Cowart*, 662, F.2d at 735. Plaintiff bore the burden of producing evidence and proving that his depression and anxiety, either singularly or in combination with his other impairments, render him disabled under the Act. *See Ellison*, 355 F.2d at 1272. He failed to present that proof and the ALJ had no duty to prove Plaintiff's case for him by recontacting Dr. Rogers.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this     26th     day of June, 2013.

/s/ R. David Proctor

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE